UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH

Case No. 05-80765-CIV-RYSKAMP/VITUNAC

YOUNG APARTMENTS, INC.,

        Plaintiff,

v.

TOWN OF JUPITER, FLORIDA,

        Defendant.
_____/

**ORDER GRANTING DEFENDANT'S MOTION TO COMPEL DISCOVERY AGAINST
GARY WESTON AND PAOLO WESTON**

THIS CAUSE comes before the Court upon Defendant's Motion to Compel Discovery against Gary Weston and Paolo Weston **[DE 72]** filed on October 23, 2006. The Westons responded **[DE 81]** on November 2, 2006. Defendant replied **[DE 84]** on November 9, 2006. On November 16, 2006, the Westons refiled **[DE 90, 91]** their original response pursuant to instructions from the Clerk's office for failure to electronically sign the document **[DE 88]**. The motion is now ripe for adjudication.

**I.  Introduction**

This is a civil action brought by Gary Weston and Paolo Weston, which this Court consolidated with another similar suit **[DE 56]**. The Westons own multiple properties jointly and individually in Jupiter, Florida. (Compl. ¶ 1). They began purchasing properties within an area of 8 to 10 acres in 2001; this area is known as Center Street. (Compl. ¶¶ 10, 12). Each building has both single and multi-family dwellings and the average rent ranges from $800 to $1200 per month. (Compl. ¶¶ 11-12).

Around 2001, there was an influx of Hispanic immigration into Jupiter fueled by the demand for day laborer jobs in nearby construction projects. (Compl. ¶ 14). Plaintiffs allege that many of the Town's

1

residents were offended by the presence of Hispanic immigrant day laborers who gathered in the Center Street area waiting to be picked up by employers, and that the Town began to pursue policies and practices designed to eliminate the concentrated Hispanic population. (Compl. ¶ 16). Specifically, Plaintiff alleges that the Town implemented practices and policies to eliminate available and affordable housing for Hispanic immigrant workers, including selective code enforcement and the adoption of an over-crowding ordinance. (Compl. ¶¶ 17-). For example, Plaintiff received notices of code violations for inoperable vehicles in the parking lot, trash in the parking lot and overgrown vegetation. (Compl. ¶ 18). Moreover, Plaintiffs allege that Defendant issued housing code violations for hurricane damage even after Governor Bush issued an executive order designed to eliminate regulatory barriers that hindered the rebuilding of suitable housing for low income citizens. (Compl. ¶¶ 19-23).

In response to the community concerns about Center Street, the Town Council discussed and on May 4, 2004, passed an over-crowding ordinance. (Compl. ¶¶ 24-48). The ordinance was enforced thorough a complaint driven system rather than having a yearly inspection of each rental property; Plaintiffs allege that this type of enforcement was used so that Jupiter could target only the Center Street Properties. (Compl. ¶¶ 25-35). The ordinance includes a five person limit to any unit where the individuals are not related by blood; the limit does not apply to any person under eighteen years old; and the ordinance includes an additional restriction on the amount of residents in a unit based on the square footage of the dwelling. (Compl. ¶¶ 30, 35, 37).

The Westons allege that they were targeted because the majority of their tenants were Hispanic. (Compl. ¶ 2, 15, 49). Because of the Town's actions, Plaintiffs entered into a contract to sell their properties to a developer, Dan Holmes, for about 1.4 million dollars. (Compl. ¶ 49). Holmes could not secure adequate financing and therefore the deal fell through. (Compl. ¶ 49). At that point, Plaintiffs decided to keep ownership of the properties. It was then that Jupiter began to target their properties

2

as having violated the over crowding ordinance. (Compl. ¶ 50). "Defendant's used Jupiter's housing code enforcement power to pressure Plaintiffs to sell the properties and to make it impossible, in practical effect, to operate their rental properties." (Compl. ¶ 50).

Since 2004, Plaintiffs have received eight notices for violations to the over crowding ordinance. (Compl. ¶¶ 51-61). In October and November, 2004, Plaintiff's received two notices for violations of the over crowding ordinance, but these violations were later dismissed. (Compl. ¶ 60). Four notices were issued on January 11, 2005 during an allegedly unlawful search of the properties. (Compl. ¶¶ 51-56). Another over crowding violation was issued on August 2, 2005. (Compl. ¶ 57). The eighth violation notice was issued in November, 2005. (Compl. ¶ 61). Each of these violations were issued to properties located in Center Street with Hispanic tenants. (Compl. ¶¶ 52, 57, 60-61).

Jupiter also issued housing code violations to Plaintiffs beginning in July, 2005 for trash by the curb, uncut grass, and a trailer that may have been unlicensed. (Compl. ¶ 63). Plaintiff's allege that "Defendants abused Jupiter's municipal code enforcement process to retaliate against Plaintiffs for challenging the Defendant's unlawful actions toward the Hispanic Immigrants living at the Properties and the Center Street area." (Compl. ¶ 64).

Plaintiffs allege that citizen and official comments at a Town Council meeting on April 5, 2005, after enforcement of the ordinance began, show that the ordinance was targeted at Hispanic Center Street residents and to the owners of the properties at Center Street. (Compl. ¶¶ 66).

Defendant submitted two sets of Interrogatories to the Westons. Defendant also sent a First Request to Produce. Plaintiffs raised various objections and provided partial responses to certain requests. Defendant originally asked this Court to compel Plaintiff to provide better answers to requests numbered 6, 7, 8, 12, 16, 17, and 19. It appears, however, that the Westons supplemented

their answers to Defendant's satisfaction to all requests but number 7. Thus, this Court will only address the dispute regarding request 7.

**II.     Discussion**

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any matter... that is relevant to the claim or defense of any party." Further, "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). When discovery appears relevant on its face, the party resisting the discovery has the burden to establish facts justifying its objections by demonstrating that the requested discovery (1) does not come within the scope of relevance as defined under Fed. R. Civ. P. 26(b)(1); or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure. *Scott v. Leavenworth Unified School Dist. No*. 453, 190 F.R.D. 583, 585 (D. Kan.1999).

Additionally, Rule 33(b)(1) requires that every interrogatory "shall be answered separately and fully in writing under oath, unless it is objected to, in which event the objecting party shall state the reasons for objection and shall answer to the extent the interrogatory is not objectionable." Fed. R. Civ. P. 33(b)(1). Moreover, "[a]ll grounds for an objection to an interrogatory shall be stated with specificity." Fed. R. Civ. P. 33(b)(4). Thus, the responding party is required to provide "a candid statement of the information sought or of the fact that objection is made to furnishing the information." *Dollar v. Long Mfg., N.C., Inc.*, 561 F.2d 613, 616 (5th Cir. 1977). It is axiomatic that "(d)iscovery by interrogatory requires candor in responding." *Id.*

**Request 7**

In request 7, Defendant requested the Westons' tax returns for ten years prior to the alleged incidents and for any year after the incidents. Defendant argued that since the Westons claimed economic damages, the information was relevant and was not barred by the work product or attorney client privileges.

Although there had been disagreement in this Circuit regarding the level of protection afforded for the discovery of tax records, that dispute has been resolved and only an ordinary showing of relevance is necessary. *Maddow v. Procter & Gamble Co., Inc.*, 107 F.3d 846, 853 (11th Cir. 1997); *see also U.S. v. Certain Real Properly known as and Located at 6469 Polo Pointe Way, Delray Beach, Fla.*, 44 F.Supp.2d 1258, 1262-64 (S.D. Fla. 2006). The party resisting discovery has the burden of showing that it is not relevant to the issues in the case. *Certain Real Property* at 1262.

The Westons are incorrect that their tax returns are not relevant. Although only specific properties may be at issue, the Westons' tax returns are relevant to determine a change of income due to the Defendant's alleged misconduct. Moreover, the amount of years for which Defendant requests the tax records is not overbroad, especially since Defendant agreed to only seek tax returns for five years prior to the incident. (Reply at 2). Having tax records for the five years prior to the alleged misconduct will help the Defendant assess the extent of the Westons' damages.

**The Westons' Failure to Sign their Interrogatories**

Civil Procedure Rule 33(b)(2) states that the "answers are to be signed by the person making them." In this case, the Westons produced the answers, not their attorney. Although review of the answers during their deposition may have verified the veracity of the information, it is more proper for the Plaintiffs to sign their answers rather than having their attorney sign the answers.

5

**Failure to Confer**

Although Defendant did not confer with Plaintiffs, dismissing the motion is within this Court's discretion. *Jones v. American General Life and Accident Ins. Co.*, 2002 WL 32073037 (S.D. Ga. 2002). Based on the record, and since the Westons objected to this motion, it does not appear that a consensus would have been reached before it was filed had Defendant conferred. Although the presence of an objection to a motion does not dissolve a party's responsibility to confer, in this case, the Court excuses Defendant's oversight.

**Attorney's Fees and Costs**

A Court must impose attorney's fees and costs when compelling discovery unless the resisting party is substantially justified in resisting or the court finds that the movant filed the motion without first making a good faith effort to obtain disclosure or discovery. Fed. R. Civ. P. 37(a)(4)(A). Since Defendant failed to state that it conferred with the Westons in its motion, and since the Westons had been supplementing their answers on a regular basis, this Court finds that Defendant filed the motion without first making a good faith effort to obtain the information before filing the motion. Simply because the matter was contested in the end does not mean that Defendant knew that the matter would be contested before it filed the motion.

### III.   Conclusion

For the reasons set forth herein, it is hereby, ORDERED AND ADJUDGED that:

(1)   Defendant's Motion to Compel Discovery against Gary Weston and Paolo Weston **[DE 72]** is GRANTED;

(2)   Plaintiffs, the Westons, shall serve candid answers to Request 7 that comport with the requirements set forth in this Order, within fifteen days;

  (3) The Westons must also personally sign their interrogatories within fifteen days.

  DONE AND ORDERED in Chambers at West Palm Beach, Florida, this 1 day of December, 2006.

               /s/ Kenneth L. Ryskamp
               KENNETH L. RYSKAMP
               UNITED STATES DISTRICT JUDGE

Copies provided:
All Counsel of Record