UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 05-80765-CIV-RYSKAMP/VITUNAC

YOUNG APARTMENTS, INC.,
GARY WESTON and PAOLO
WESTON,

      Plaintiffs,

v.

TOWN OF JUPITER, FLORIDA,

      Defendant.
_____/

### ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

THIS CAUSE comes before the Court upon Defendant's motion for summary judgment **[DE 102]** filed on January 22, 2007. Young Apartments responded **[DE 114]** on March 5, 2007. The Westons responded **[DE 117]** on March 5, 2007. Defendant replied **[DE 127]** on March 12, 2007. The Court heard oral argument from the parties on March 16, 2007. Accordingly, the motion is now ripe for adjudication.

**I. Introduction**

This is a civil action brought first by Young Apartments and then by the Westons in a related action. This Court consolidated the cases **[DE 56]** on April 21, 2006. The following details the facts alleged by each Plaintiff.

**A. Young Apartments**

Young Apartments, owns 1.7 acres of land containing two buildings located at 1600 Center Street, in Jupiter, Florida. *See* First Am. Compl. **[DE 28]**, at ¶¶ 1, 9. The buildings contain thirty rental housing units and related facilities. *Id.* at ¶ 9. At the time Plaintiff

purchased the property in March, 2000, the property was in full compliance with the Housing Standards Code of Jupiter and nearly 100% occupied. *Id.* at ¶¶ 8, 11. Plaintiff alleges that shortly after the time it purchased the property, the Town experienced an increase in its Hispanic immigrant population, fueled by the demand for day laborer jobs in nearby construction projects. *Id.* at ¶ 12. Accordingly, Plaintiff's buildings were primarily occupied by Hispanic immigrant workers. *Id.* at ¶ 13.

Plaintiff further alleges that many of the Town's residents were offended by the presence of Hispanic immigrant day laborers who gathered in the Center Street area waiting to be picked up by employers, and that the Town began to "aggressively pursue policies and practices designed to eliminate the perceived problem..." *Id.* at ¶¶ 14, 15. Specifically, Plaintiff alleges that the Town implemented practices and policies to eliminate available and affordable housing for Hispanic immigrant workers, including selective code enforcement and the adoption of an over-crowding ordinance. *Id.* at ¶ 15 *et seq*. For example, Plaintiff received notices of code violations for inoperable vehicles in the parking lot, trash in the parking lot and overgrown vegetation. *Id.* at ¶¶ 16-17.

Plaintiff contends that the Town's allegedly discriminatory policies and practices made it practically impossible to operate its business, and that in December, 2004, it entered into a binding contract to sell the property for $3,750,000.00. *Id.* at ¶ 52. Plaintiff claims that shortly thereafter, on January 11, 2005, the Town conducted an unlawful raid by forcibly entering the thirty rental units at its property under the guise of conducting an inspection for violations of the Town's over-crowding ordinance. *Id.* at ¶ 56. The ordinance limits the number of occupants of any housing unit to five individuals, "unless all members are related by blood or marriage." *Id.*

at ¶ 32 (citing Jupiter Housing Code, at § 21-206).  As a result of the inspections, the Town opened four Code Enforcement Board cases against Plaintiff for violations of the over-crowding ordinance, as well as for physical defects on the property resulting from hurricane damage in September, 2004.  *Id.* at ¶ 57.

At a meeting on January 21, 2005, Plaintiff advised the Town that the property was under contract to be sold for $3,750,000, and negotiated an Agreed Order to avoid demolition of the property.  *Id.* at ¶ 60.  The Agreed Order provided deadlines for completion of various repairs and the imposition of a fine of $250 per day for each day beyond the final completion deadline of February 18, 2005.  *Id.*  Plaintiff met two of the three deadlines established by the Town, but was unable to complete roof repairs necessitated by hurricane damage by February 18, 2005.  *Id.* at ¶ 63.  Plaintiff alleges that on February 23, 2005, the Town announced that it would repudiate the Agreed Order and condemn the property.  *Id.* at ¶ 67.  The following day, the Town's building officials condemned the fourteen units under repair and ordered that the units be vacated immediately.  *Id.* at ¶ 70.  Plaintiff contends that as a result of the condemnation of the property and the other allegedly discriminatory actions by the Town, the buyer under the purchase contract canceled the agreement, resulting in substantial financial losses to Plaintiff.  *Id.* at ¶¶ 53, 72.

On August 22, 2005, Plaintiff instituted the instant lawsuit against the Town, the Town Manager (Lukasik), and Town Building Official (Lecky) **[DE 1]**.  As amended, the Complaint **[DE 28]** alleges seven causes of action: Violations of the Fourteenth Amendment (Counts I, II, V, VI); Violation of the Fourth Amendment (Counts III and IV); and Breach of Contract/Covenant of Good Faith and Fair Dealing (Count VII).

**B.     The Westons**

Gary Weston and Paolo Weston, the Westons, own multiple properties jointly and individually in Jupiter, Florida. *See* Compl. **[DE 1]**, at ¶ 1. They began purchasing properties within an area of 8 to 10 acres in 2001; this area is known as Center Street. *Id*. at ¶¶ 10, 12. Each building has both single and multi-family dwellings and the average rent ranges from $800 to $1200 per month. *Id*. at ¶¶ 11-12.

Around 2001, there was an influx of Hispanic immigration into Jupiter fueled by the demand for day laborer jobs in nearby construction projects. *Id*. at ¶ 14. Plaintiffs allege that many of the Town's residents were offended by the presence of Hispanic immigrant day laborers who gathered in the Center Street area waiting to be picked up by employers, and that the Town began to pursue policies and practices designed to eliminate the concentrated Hispanic population. *Id*. at ¶ 16. Specifically, Plaintiff alleges that the Town implemented practices and policies to eliminate available and affordable housing for Hispanic immigrant workers, including selective code enforcement and the adoption of an over-crowding ordinance. *Id*. at ¶¶ 17-. For example, Plaintiff received notices of code violations for inoperable vehicles in the parking lot, trash in the parking lot and overgrown vegetation. *Id*. at ¶ 18. Moreover, Plaintiffs allege that Defendant issued housing code violations for hurricane damage even after Governor Bush issued an executive order designed to eliminate regulatory barriers that hindered the rebuilding of suitable housing for low income citizens. *Id*. at ¶¶ 19-23.

In response to the community concerns about Center Street, the Town Council discussed and on May 4, 2004, passed an over-crowding ordinance. *Id*. at ¶¶ 24-48. The ordinance was enforced thorough a complaint driven system rather than having a yearly inspection of each rental property; Plaintiffs allege that this type of enforcement was used so that Jupiter could target only the Center Street Properties. *Id*. at ¶¶ 25-35. The ordinance includes a five person limit to any unit where the

individuals are not related by blood; the limit does not apply to any person under eighteen years old; and the ordinance includes an additional restriction on the amount of residents in a unit based on the square footage of the dwelling. *Id*. at ¶¶ 30, 35, 37.

The Westons allege that they were targeted because the majority of their tenants were Hispanic. *Id*. at ¶ 2, 15, 49. Because of the Town's actions, Plaintiffs entered into a contract to sell their properties to a developer, Dan Holmes, for about $1.4 million. *Id*. at ¶ 49. Holmes could not secure adequate financing and therefore the deal fell through. *Id*. at ¶ 49. Plaintiffs decided to keep ownership of the properties. It was then that Jupiter began to target these properties as having violated the over crowding ordinance. *Id*. at ¶ 50. "Defendant's used Jupiter's housing code enforcement power to pressure Plaintiffs to sell the properties and to make it impossible, in practical effect, to operate their rental properties." *Id*. at ¶ 50.

Since 2004, Plaintiffs have received eight notices for violations to the over crowding ordinance. *Id*. at ¶¶ 51-61. In October and November of 2004, Plaintiff's received two notices for violations of the over crowding ordinance, but these violations were later dismissed. *Id*. at ¶ 60. Four notices were issued on January 11, 2005 during an allegedly unlawful search of the properties. *Id*. at ¶¶ 51-56. Another over crowding violation was issued on August 2, 2005. *Id*. at ¶ 57. The eighth violation notice was issued in November, 2005. *Id*. at ¶ 61. Each of these violations were issued to properties located in Center Street with Hispanic tenants. *Id*. at ¶¶ 52, 57, 60-61.

Jupiter also issued housing code violations to Plaintiffs beginning in July, 2005 for trash by the curb, uncut grass, and a trailer that may have been unlicensed. *Id*. at ¶ 63. Plaintiff's allege that "Defendants abused Jupiter's municipal code enforcement process to retaliate against Plaintiffs for challenging the Defendant's unlawful actions toward the Hispanic Immigrants living at the Properties and the Center Street area." *Id*. at ¶ 64.

Plaintiffs allege that citizen and official comments at a Town Council meeting on April 5, 2005, after enforcement of the ordinance began, show that the ordinance was targeted at Hispanic Center Street residents and to the owners of the properties at Center Street. *Id*. at ¶¶ 66.

## II.     Discussion

In separate motions to dismiss, this Court ruled that the only remaining issues are those related to selective enforcement. Plaintiffs allege that Defendant violated the Equal Protection Clause of the Fourteenth Amendment by enacting the over-crowding ordinance and then enforcing the ordinance only against properties primarily occupied by Hispanic residents. Specifically, Plaintiffs allege that the Town's "deliberate policy... of identifying properties in the Center Street area occupied by Hispanic immigrant workers is the sole target of the Over-Crowding Ordinance... while deliberately ignoring, and not enforcing the ordinance with respect to, similarly situated properties in Jupiter, creates a selective enforcement violation of the Equal Protection Clause."

### A.     Summary Judgment Standard

A party is entitled to judgment as a matter of law when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment should be entered only when the moving party has sustained its burden of showing the absence of a genuine issue as to any material fact when all the evidence is viewed in the light most favorable to the nonmoving party. *See Sweat v. Miller Brewing Co.,* 708 F.2d 655 (11th Cir. 1983). Summary judgment is mandated when a plaintiff "fails to make a showing sufficient to establish the existence of an element

essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In considering a motion for summary judgment, the Court must construe all facts and draw all reasonable inferences in favor of the non-moving party. *HCA Health Services of Ga., Inc. v. Employers Health Ins. Co.*, 240 F.3d 982, 991 (11th Cir. 2001). The non-moving party bears the burden of coming forward with evidence of each essential element of their claims, such that a reasonable jury could find in his favor. *See Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990). The burden is not a heavy one; however, the non-moving party "[m]ay not rest upon the mere allegations and denials of [its] pleadings, but [its] response ... must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "It is the obligation of the non-moving party, however, not the Court, to scour the record in search of the evidence that would defeat a motion for summary judgment: Rule 56 'requires the nonmoving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Lawrence v. Wal-Mart Stores, Inc.*, 236 F. Supp. 2d 1314, 1322 (M.D. Fla. 2002) (quoting *Celotex*, 477 U.S. at 324). Moreover, mere conclusory, uncorroborated allegations by a plaintiff in an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a well-supported motion for summary judgment. *See Earley*, 907 F.2d at 1081. The failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial and requires the court to grant the motion for summary judgment. *See Celotex*, 477 U.S. at 322.

**B.     Analysis**

Section 1983 provides a cause of action when any person acting under the color of state law, deprives another of the rights and privileges secured by the Constitution or other laws of the United States. 42 U.S.C. § 1983. Local governments are only subject to § 1983 liability if its official policies directly caused a constitutional violation. *Campbell v. Rainbow City, Ala.,* 434 F.3d 1306, 1312 (11th Cir. 2006).

The Fourteenth Amendment of the United States Constitution provides no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. In order to maintain a claim under the Equal Protection Clause, a plaintiff must show that it has been treated differently than similarly situated property owners and that the differential treatment was motivated by purposeful discrimination. *See, e.g., Strickland v. Alderman,* 74 F.3d 260, 264 (11th Cir. 1996). Plaintiffs have alleged that the Town treated similarly situated properties differently, and has identified at least three specific properties that were over-crowded and occupied by non-Hispanic residents. Thus, the dispute in this case centers around whether the alleged differential treatment was motivated by purposeful discrimination against Hispanics.

As explained in the orders partially granting Defendant's motions to dismiss, Plaintiffs do not have standing to complain of the alleged racial or ethnic discrimination by Defendant. Thus, Plaintiffs can only bring this action because of differential treatment based on a non-suspect characteristic, such as the proximity of the properties to Center Street. Moreover, Plaintiffs do not allege that the over-crowding ordinance involves a classification based on race, as enacted; thus, the ordinance need only pass muster under the rational basis standard of review. *See Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995). In those orders, this Court found that the

ordinance was facially neutral. Thus, the only remaining issue was whether ordinance is enforced in a discriminatory manner.

To prevail on a "selective enforcement" claim, a plaintiff must show: (1) that it was treated differently from other similarly situated properties; and (2) that the defendant unequally applied a facially neutral ordinance for the purpose of discriminating against the plaintiff. *Strickland v. Alderman,* 74 F.3d 260, 264 (11th Cir. 1996). One is similarly situated to another when they are *prima facie* identical in all relevant respects, which requires a specific inquiry. *Campbell*, at 1313-14 (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (*per curiam*)). The Eleventh Circuit has further recognized that a plaintiff need not show ill will or discriminatory purpose by a defendant; rather, the plaintiff need only allege that it has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. *Campbell*, at 1314.

**Similarly Situated**

The Parties disagree about what conduct the Plaintiffs must show to make out their claim. Defendant argues that Plaintiff must provide evidence to show that a residence was overcrowded but that the Town failed to issue a citation. Plaintiffs, however, argue that in order to prevail, they must show that the Town received a complaint about overcrowding and failed to investigate the complaint. Although in a summary judgment motion, the Court must view all evidence in light of the non-moving party, the onus still rests on the Plaintiff to prove its case. Here, Plaintiffs' claims fail regardless of what conduct the Court considers.

First, there has been no evidence submitted in the record to prove that a residence was overcrowded but that the Town failed to issue citation. In fact, Plaintiffs agree that they did not

produce that evidence. Plaintiffs contend that it would be impossible for a citizen to prove overcrowding in this way because it requires an interior search of the residence. They argue that no citizen would have the authority to access to the interior of a residence to confirm overcrowding. Thus, under this analysis Plaintiff failed to show that the Town treated two similarly situated properties differently.

Likewise, Plaintiffs have failed to show that the Town received overcrowding complaints that it failed to investigate. Plaintiffs hinge their argument on a letter containing nearly 200 potential violations that Mr. Weston sent to the Town. Only a handful of those complaints were for overcrowding violations. Plaintiffs suspected certain properties had violated the overcrowding ordinance based on observations from outside the building such as number of cars and number of people coming into and out of a residence. Plaintiffs allege that the Town never investigated the complaints because the number of cars and people never changed. That, however, is not sufficient in light of the testimony provided by the Town. There is nothing in the record to show that the Town failed to investigate the complaints. In fact, Jupiter does not keep a record of complaints that are investigated but where no code violation is discovered and Melillo[1] testified in his deposition that all complaints are investigated. Plaintiffs have failed to provide any other information, other than conjecture, to prove that the town failed to investigate his complaints. The large number of cars and people that Plaintiffs observe could be attributed to a large number of guests or family members in a particular dwelling, neither of which would trigger a code violation. Furthermore, the Town only issues citations for violations that its code enforcement officers personally observe. Thus, if, when the enforcement officer investigated the

---

[1] Frank Melillo is the Jupiter Code-Enforcement Supervisor.

property and the number of cars and people in and around a residence indicated that no violation existed then the officer would not have issued a citation and no report would have been generated.

Finally, Young Apartments complains that it was issued a red tag violation for hurricane damage and that no other property was similarly cited. Again, Plaintiffs have failed to provide sufficient evidence to show that there was a similarly situated residence that did not receive a red tag violation. In fact, a chart detailing each property that was issued a red tag violation from September 2004 until February 2005 shows that red tag violations were issued throughout the Town. Although violations may have occurred more frequently in some areas of Jupiter as opposed to others, the evidence shows that the Town did not exclusively target only one area, specifically Center Street.

**Rational Basis**

Finally, in regards to the second prong of the test, city governments function with limited resources. It is rational for a city to focus its resources on areas where violations are more prevalent. Although Plaintiffs did not submit evidence showing that Defendant failed to equally enforce ordinance violations, it may be rational for a city to do so.

The City also has an interest in protecting the public health, safety and welfare in enforcing these ordinances. Overcrowding can make it difficult for people to escape in a fire, as most recently occurred in the Bronx where twenty two people lived in one residence. Nine people were killed in the fire. The Town enacted these ordinances to ensure that all people living in that City enjoyed the same level of basic housing. Thus, although some building owners may believe that renting apartments to an individual where walls are missing, mold is growing

throughout the residence and any number of individuals can live in a small space, Jupiter committed its resources to make sure that all individuals have a safe and healthy home.

### III.     Conclusion

Accordingly, it is hereby,

ORDERED AND ADJUDGED that Defendant's motion for summary judgment **[DE 102]** is **GRANTED**. Final judgment shall be entered by separate order.

DONE AND ORDERED in Chambers at West Palm Beach, Florida, this 30 day of March, 2007.

    /s/ Kenneth L. Ryskamp  
KENNETH L. RYSKAMP  
UNITED STATES DISTRICT JUDGE

Copies provided:  
All counsel of record